OPINION
{¶ 1} Appellant Cecil Adams appeals a judgment of the Licking County Court of Common Pleas, convicting him of eight counts of gross sexual imposition, one count of rape, and one count of sexual battery:
 {¶ 2} "I. THE CONVICTION OF THE DEFENDANT-APPELLANT ON COUNTS TWO, THREE, FOUR, SIX, SEVEN, NINE, ELEVEN AND SIXTEEN CANNOT STAND AS INSUFFICIENT EVIDENCE WAS INTRODUCED TO SUSTAIN A CONVICTION.
 {¶ 3} "II. THE CONVICTION OF THE DEFENDANT-APPELLANT ON COUNTS ONE AND THREE CANNOT STAND AS INSUFFICIENT EVIDENCE WAS INTRODUCED TO ESTABLISH EVERY ELEMENT OF THE OFFENSE CHARGED BEYOND A REASONABLE DOUBT AND TO THUS SUSTAIN A CONVICTION.
 {¶ 4} "III. THE TRIAL COURT COMMITTED HARMFUL ERROR IN ALLOWING THE HEARSAY TESTIMONY TO REACH THE JURY FOR THE TRUTH OF THE MATTERS ASSERTED THEREIN."
 {¶ 5} The victim in the instant convictions is appellant's daughter. Between January of 1999, when the child was eleven years old, and January of 2002, appellant engaged in a variety of sexual misconduct with his daughter at the family residence in Licking County. At various times, appellant touched his daughter on the inner thigh, butt, and breasts over her clothes. He also undressed her and touched her breasts, butt, and vaginal area. Appellant made his daughter touch his penis. These acts gave rise to the charges of gross sexual imposition. On one occasion, appellant inserted his fingers into her vagina, giving rise to the charge of rape. On another occasion, he kissed her vaginal area and inserted his fingers into her vagina, giving rise to the charges of sexual battery.
 {¶ 6} Appellant was indicted by the Licking County Grand Jury on sixteen counts: ten counts of gross sexual imposition, one count of rape, five counts of sexual battery. The State dismissed two of the charges of gross sexual imposition, and four of the charges of sexual battery. The remaining charges proceeded to jury trial in the Licking County Common Pleas. Following trial, appellant was convicted on all remaining counts. On the eight convictions for gross sexual imposition and the conviction for sexual battery, the court imposed a prison term of one year. On the conviction for rape, the court imposed a prison term of three years. The sentences in five of the gross sexual imposition convictions, the rape conviction, and the sexual battery conviction were to run consecutively to one another, but concurrent to the sentences imposed in the remaining three gross sexual imposition cases.
 I {¶ 7} In his first assignment of error, appellant argues that the convictions on counts two, three, four, six, seven, nine, eleven, and sixteen are not supported by sufficient evidence, as the State failed to prove that the offenses occurred within the time frames specified in the indictment and bill of particulars.
 {¶ 8} Appellant's argument is improperly couched as a sufficiency of evidence claim. Ordinarily the precise dates and times are not essential elements of the offense, and a certain degree of inexactitude of averments, where it relates to matters other than elements of the offense, is not fatal to the prosecution. State v. Sellards (1985),17 Ohio St.3d 169. The State is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment. Id. In the instant case, the testimony of appellant's daughter placed the offenses within the general time frame of the dates specified in the indictment and the bill of particulars.
 {¶ 9} As to count two, alleging gross sexual imposition, the indictment alleged that the offense occurred between January 18, 1999, and January 18, 2000. The bill of particulars narrowed the time frame to March 1, 1999, to July 31, 1999. The victim testified that the offense occurred when she was eleven years old. Her eleventh birthday was January 18, 1999. She further testified that this incident occurred after the incident which was the basis for the first count, which she placed as having occurred after the furniture in her home was moved during spring cleaning. She testified that this occurred sometime between March 1, and August, 1999. She further recalled that she was wearing a pink spring nightgown and the weather was not cold.
 {¶ 10} As to count three, the indictment alleged that the offense of gross sexual imposition occurred between January 18, 1999, and January 18, 2000. The bill of particulars narrowed the time frame to March 1, 1999, through August 31, 1999. The victim testified that this incident took place on a loveseat in the home sometime after, but close in time, to count two. Because the incident occurred near the earlier incident, the bill of particulars added the entire month of August, 1999, to the approximate dates.
 {¶ 11} As to count four, the indictment alleged that this act of gross sexual imposition occurred between January 18, 1999, and January 18, 2000. The bill of particulars narrowed the time frame to August 15, 1999 through December 20, 1999. The victim testified that the incident occurred sometime between her eleventh and twelfth birthday, occurred after the acts alleged in count three, and occurred when it was cold outside. Because she turned twelve in January of 2000, the State narrowed the time frame to after count three, yet during the cooler fall and early winter months of 1999.
 {¶ 12} As related to count six, the indictment specified that the act occurred between January 18, 2000, and January 18, 2001. The bill of particulars narrowed the time frame to January 18, 2000 through February 28, 2000. After the evidence was presented, the range of dates as stated in the bill of particulars was amended, without objection from appellant, to read between January 18, 2000, and August 31, 2000. As to this count, the victim testified that the incidents took place after her twelfth birthday, which was January 18, 2000. She testified that appellant kissed and touched her breasts, and that this conduct occurred before August.
 {¶ 13} As to count seven, the indictment specified that the offense occurred between January 18, 2000, and January 18, 2001. The bill of particulars narrowed the time frame to January 18, 2000 through April 30, 2000. As to this count, the victim testified that she went into the garage to see her pet squirrel, at which time appellant insisted that she hold his penis. She testified that she thought this happened next after the incident underlying count six, and from her sequence of answers about incidents taking place when she was twelve years old, she clearly placed the incident as occurring within the year between the ages of twelve and thirteen.
 {¶ 14} As to count nine, the indictment alleged that the offense occurred between January 18, 2000, and January 18, 2001. The bill of particulars narrowed the time frame to April 30, 2000 through January 18, 2001. During her testimony concerning this count, the victim was asked to focus on the range of dates between April 30, 2000, and January 18, 2001. She then tells the jury of incidents occurring with appellant where he kissed her vaginal area and breasts, the conduct alleged to in count nine.
 {¶ 15} The testimony relating to count eleven, rape, and count sixteen, sexual battery, was
 {¶ 16} somewhat interwoven. Relating to count eleven, the indictment alleged that the conduct occurred between December 1, 2000, and January 18, 2001. The bill of particulars specified that the act occurred between August 1, 2000, and January 18, 2001. The bill was later amended to begin the time frame on September 1, 2000. As to count sixteen, sexual battery, the indictment alleged that the act occurred between January 18, 2001, and April 30, 2001. The bill of particulars narrowed the time frame to the month of April, 2001.
 {¶ 17} The victim testified as to two incidents where appellant digitally penetrated her vagina, causing it to hurt. She noted that the same thing happened both before and after she turned thirteen. With respect to the charge of rape, she reported that an incident of digital penetration occurred when she was not yet thirteen. She said the incident was like the one which occurred when she was thirteen, which gave rise to the charges of sexual battery, in count sixteen. As to the sexual battery charge, she testified that it occurred during April of 2001, after she turned thirteen.
 {¶ 18} The State demonstrated that the offenses occurred within the general time frames specified by the indictment and the bill of particulars. As to the charges where the time frames did not match, the State moved to amend the bill of particulars to conform to the evidence, which was granted without objection from appellant. Appellant has demonstrated no prejudice from the State's failure to place a precise date on each of the events in question.
 {¶ 19} The first assignment of error is overruled.
 II {¶ 20} Appellant argues that the convictions on count one and three are not supported by sufficient evidence, as the State failed to demonstrate that the touching at issue was for purposes of sexual gratification. In count one, the bill of particulars alleged that appellant touched the inner thigh of his daughter. In count three, the bill of particulars specified that he touched her breasts.
 {¶ 21} In making a determination as to proof of purpose of sexual gratification, the trier of fact may infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with areas of the body as described in R.C.2907.01. State v. Cobb (1991), 81 Ohio App.3d 179, 185. As defined in R.C. 2907.01 (B), sexual contact means the touching of an erogenous zone of another, including without limitation the thigh, genital, buttock, pubic region, or breasts of a female. In making a decision as to sexual gratification, the trier of fact may consider the type, nature, and circumstances of the contact, along with the personality of the defendant. Cobb, supra.
 {¶ 22} As to count one, the victim testified that when she was eleven years old, appellant placed his hand on her thigh, and she moved away and removed his hand from her thigh. The record reflects that she demonstrated the type and location of the touch by indicating how it happened to the jury. Tr. 151. A verbal description of what she was demonstrating does not appear in the record; therefore, we cannot determine what the jury saw concerning the type, location and duration of the touching in concluding that the touching was sexual in nature. Further, the thigh is an area listed in the statute as an erogenous zone. There was sufficient evidence to support the jury's conclusion that appellant touched his daughter's thigh for purposes of sexual gratification.
 {¶ 23} As to count three, the record demonstrated that appellant touched his daughter, who was eleven years old, on the breast and buttocks while seated on the loveseat in the home. The evidence reflected that she was trying to get up from the loveseat when appellant turned her around and touched both her breasts and buttock. Both of these areas are listed in the statute, and from the evidence presented, the jury could conclude that appellant touched her for purposes of sexual gratification.
 {¶ 24} The second assignment of error is overruled.
 III {¶ 25} In his third assignment of error, appellant claims that statements made by the child victim to a nurse practitioner, Janet McCleary, were not properly admitted pursuant to Evid.R. 803(4), as the State did not demonstrate that they were made for purposes of medical treatment. Appellant argues the State presented no evidence that the victim verbalized her motivation for being treated, nor did the nurse practitioner state that she knew exactly what the victim understood her reason for the medical examination be.
 {¶ 26} In State v. Dever, 64 Ohio St.3d 401, 1992-Ohio-41, the Ohio Supreme Court considered the issue of the admissibility of hearsay pursuant to the exception for statements made for medical diagnosis or treatment, when such statements are made by a child victim in a sex abuse case. The court noted that once a child is at the doctor's office, the probability of understanding the significance of the visit is heightened and the motivation for diagnosis and treatment will normally be present. Id. at 410. Absent extraordinary circumstances, the child has no more motivation to lie than an adult would in similar circumstances, as most children know that if they do not tell the truth to the persons treating them, they may get worse and not better. Id. If the court discerns that the child's statements were not made for purposes of diagnosis or treatment, the statements must be excluded. Id. 410-11.
 {¶ 27} In dicta, the Dever court stated that in making a determination of whether the statements are made for purposes of medical diagnosis or treatment, the court should voir dire the victim to determine if the statements were inappropriately influenced by another, and to consider the circumstances surrounding the making of the hearsay statement. Id. at 410. However, this court has noted that when the court fails to conduct the voir dire, the motivational factors of great concern in the Dever case may be addressed where the victims testify prior to the testimony of the medical professional concerning the hearsay statement, and were thus subject to cross examination and confrontation. State v.Kelly (1994), 93 Ohio App.3d 257. Where the victims first testify, the right of confrontation is not violated by the trial court's technical error in failing to conduct a Dever voir dire. Id.
 {¶ 28} In the instant case, the court did not conduct a voir dire of the victim to determine the circumstances surrounding the statement. However, the victim was old enough to verbally express herself, and had been subject to cross examination before the testimony of Janet McCleary. McCleary testified that she explained to the victim that she was at the doctor's office, and explained the nature of the physical examination to be done. Tr. 431-32. The victim knew that McCleary was a medical professional, and that the physical examination was done to address any medical problems. Tr. 422, 448,455-56. The examination did not address only sexual abuse issues, but included obtaining a past medical history; determining developmental, medication and immunization status; and whether the victim was ill at the time of the examination. Tr. 433, 488, 490. The court did not err in concluding that the hearsay statements were admissible as made for purposes of medical diagnosis and treatment.
 {¶ 29} The third assignment of error is overruled.
 {¶ 30} The judgment of the Licking County Court of Common Pleas is affirmed.
By Gwin, P.J., Edwards, J., and Boggins, J., concur
topic: GSI — rape